AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| CARL STUART FAREY | ) | 6:20-mj- 1062 |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 15, 2017_____ in the county of _____Osceola_____ in the

____Middle____ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1546 and 2 | Aiding and abetting fraud and misuse of visas, permits, and other documents |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Curtis Johnson, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  __1-17-2020__

_____
*Judge's signature*

City and state:  _____Orlando, Florida_____

Thomas B. Smith, U.S. Magistrate Judge
*Printed name and title*

STATE OF FLORIDA

ORANGE COUNTY

Case No. 6:20-mj- 1062

## AFFIDAVIT IN SUPPORT OF THE
## ISSUANCE OF A CRIMINAL COMPLAINT

I, Curtis Johnson, being duly sworn, attest and affirm the following:

### INTRODUCTION AND AGENT BACKGROUND

1.     This affidavit supports an application for an arrest warrant against **CARL STUART FAREY** (**FAREY**) for violations of 18 U.S.C. §§ 1546 and 2.

2.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.     I have been a Special Agent with Immigration and Customs Enforcement's, Homeland Security Investigations (HSI) since 2003.  Prior to 2003, I was employed by the United States Department of Justice, Immigration and Naturalization Service (INS), as an United States Border Patrol Agent beginning in 1992, then as an Immigration Inspector in 1994, and finally as an INS Special Agent in 1996.  I was transferred to the United States Department of Homeland Security in 2003.  I am assigned to HSI

Orlando's Document and Benefit Fraud Task Force (DBFTF). The DBFTF detects, deters, and dismantles organizations that facilitate document and benefit fraud. Document fraud is the manufacturing, counterfeiting, alteration, sale, or use of fraudulent documents to circumvent immigration laws or for other criminal activity. Benefit fraud is the knowing and willful misrepresentation of a material fact on a petition or application to gain an immigration benefit. I have been involved in investigations involving administrative and criminal violations of immigration fraud, including violations of 18 U.S.C. § 1546 (fraud and misuse of visas, permits and other documents). I have participated in the execution of search warrants involving searches and seizures of documents, computers, computer equipment, and electronically stored information.

    4.    I submit that based on my training and experience and the facts, as set forth herein, there is probable cause to believe that from approximately 2010 through August of 2019, **FAREY** committed violations of 18 U.S.C. §§ 1546 and 2 (aiding and abetting fraud and misuse of visas, permits and other documents).

### OVERVIEW OF THE E-2 TREATY INVESTOR VISA

    5.    Under U.S. laws and regulations, individuals who are not U.S. citizens, legally referred to as "aliens" in 8 U.S.C. § 101(a)(3), are not

permitted to lawfully work in the U.S. unless they have been granted permission by the U.S. government. Certain aliens can obtain a nonimmigrant visa (NIV) from the United States Department of State (DOS) to apply for admission into the U.S. or, if already in the U.S., may request to extend or change their lawful nonimmigrant status with the United States Citizenship and Immigration Services (USCIS). A visa is a document issued by a consular representative of the U.S. that permits the bearer to apply for admission to enter the U.S., either as an intending immigrant (i.e. an immigrant visa, or "green card") or for temporary entry into the U.S. as a nonimmigrant by way of an NIV. The United States issues NIVs in various classifications, including the E-2 treaty investor visa (hereinafter "E-2").

6.     A lawful nonimmigrant alien present in the U.S. may file USCIS Form I-129 (Petition for a Nonimmigrant Worker) to request a change of status from their original status to E-2 nonimmigrant status. Individuals outside the United States must apply with DOS to receive E-2 status. Approved E-2 applications permit the visa holders' entry into the U.S.

7.     A petitioner may file an employment-based petition on behalf of an alien to come to or remain in the United States temporarily to perform services or labor, or to receive training. An E-2 is such a visa classification.

3

8.  The E-2 nonimmigrant visa classification allows a national of a treaty country[1] to be admitted to or remain in the U.S. when investing a substantial amount of capital in a U.S. business.  The E-2 visa holder can confer legal status to some of their employees, allowing for their legal entry into the United States.

9.  An alien seeking E-2 status must meet the following requirements; 1) be a national of a country with which the United States maintains a treaty of commerce and navigation, 2) have invested, or be actively in the process of investing, a substantial amount of capital in a bona fide enterprise in the United States, and 3) be seeking to enter the U.S. solely to develop and direct the investment enterprise.  Applicants establish this by exhibiting at least 50% ownership of the enterprise or possession of operational control through a managerial position or other corporate device.

10.  An investment is the treaty investor's placing of capital, including funds and/or other assets, at commercial risk with the objective of generating a profit.  The capital must be subject to partial or total loss if the investment fails.  The treaty investor must show that the funds have not been obtained, directly or indirectly, from criminal activity.  *See* 8 CFR 214.2(e)(12).

---

[1] A treaty country is a country with which the United States maintains a treaty of commerce and navigation.  The DOS lists approximately 83 recognized treaty countries, including the United Kingdom.

11.    A substantial amount of capital includes an amount 1) substantial in relationship to the total cost of either purchasing an established enterprise or establishing a new one, 2) sufficient to ensure the treaty investor's financial commitment to the successful operation of the enterprise, and 3) of a magnitude to support the likelihood that the treaty investor will successfully develop and direct the enterprise.  The lower the cost of the enterprise, the higher, proportionately, the investment must be to be considered substantial.

12.    A bona fide company refers to a real, active, and operating commercial or entrepreneurial undertaking which produces services or goods for profit.  Any derivative alien employees must be the same nationality of the principal alien employer E-2 visa holder (who must have the nationality of the treaty country) and either be engaging in duties of an executive or supervisory character, or if employed in a lesser capacity, have special qualifications.

13.    If the principal alien employer is not an individual, it must be a company that is at least 50% owned by treaty country nationals present in the United States.  These owners must be maintaining E-2 nonimmigrant treaty investor status.  If the owners are not in the United States, they must be, if they were to seek admission to this country, classifiable as nonimmigrant treaty investors.  *See* 8 CFR 214.2(e)(3)(ii).

5

14.     The E-2 must function in a supervisory or executive role.  The individual must have ultimate control and responsibility for the organization's overall operation.  *See* 8 CFR 214.2(e)(17).

15.     The E-2 petition must be filed with evidence of ownership, substantial investment, and the nationality of the applicant.  Evidence of substantial investment may include stock certificates, articles of incorporation, lease agreements, business equipment, business licenses, annual reports, profit and loss statements, organization charts, bank account records, employee records, IRS W-2 tax forms, educational transcripts and diplomas, and letters from employers describing job titles, duties, operator's manuals, and the required level of education and knowledge.

16.     Qualified E-2 visa recipients are allowed a maximum initial stay of two years.  Requests for extension may be granted in increments of up to two years each.  There is no maximum limit to the number of extensions an E-2 nonimmigrant can receive.  All E-2 nonimmigrants, however, must maintain an intention to depart the United States when their status expires or is terminated.

17.     A petitioner may seek to obtain U.S. permanent resident status, commonly known as a green card, for the E-2 beneficiary by filing a USCIS Form I-140, Petition for Alien Worker.  If approved, the E-2 would then be

able to obtain U.S. Citizenship after meeting the requirements for naturalization.

## OVERVIEW OF THE L-1A INTRACOMPANY TRANSFEREE

18.     A petitioner may file an employment-based petition on behalf of an alien to come to or remain in the United States temporarily to perform services or labor, or to receive training.  This is an L-1A Intracompany Transferee visa classification.

19.     The L-1A classification is for aliens coming to the United States temporarily to perform services in a managerial or executive capacity for the same employer (or for the parent, branch, subsidiary, or affiliate of the employer) that employed the alien abroad in a capacity that was managerial or executive in nature, or one that required specialized knowledge.

20.     The L-1A nonimmigrant classification enables a U.S. employer to transfer an executive or manager from one of its affiliated foreign offices to one of its offices in the United States.  This classification also enables a foreign company which does not yet have an affiliated U.S. office to send an executive or manager to the United States with the purpose of establishing one.

21.     To qualify for L-1A classification in this category, the employer must 1) have a qualifying relationship with a foreign company (parent company, branch, subsidiary, or affiliate, collectively referred to as qualifying

organizations) and 2) be doing business as an employer in the United States and in at least one other country directly or through a qualifying organization for the duration of the beneficiary's stay in the United States as an L-1A. While the business must be viable, there is no requirement that it be engaged in international trade.

22.    Doing business means the regular, systematic, and continuous provision of goods or services by a qualifying organization.  This does not include the mere presence of an agent or office of the qualifying organization in the United States and abroad.  To qualify, the named employee must also 1) have been working for a qualifying organization abroad for one continuous year within the three years immediately preceding his or her admission to the United States, and 2) be seeking to enter the United States to provide service in an executive[2] or managerial capacity[3] for a branch of the same employer or one of its qualifying organizations.

23.    For foreign employers seeking to send an employee to the United States as an executive or manager to establish a new office, the employer must

---

[2] Executive capacity generally refers to the employee's ability to make decisions of wide latitude with limited oversight.

[3] Managerial capacity generally refers to the ability of the employee to supervise and control the work of professional employees and to manage the organization, or a department, subdivision, function, or component of the organization.  It may also refer to the employee's ability to manage an essential function of the organization at a high level, without direct supervision of others.  *See* section 101(a)(44) of the Immigration and Nationality Act, as amended, and 8 CFR 214.2(l)(1)(ii) for complete definitions.

also show that 1) the employer has secured sufficient physical premises to house the new office, 2) the employee has been employed as an executive or manager for one continuous year in the three years preceding the filing of the petition, and 3) the intended U.S. office will support an executive or managerial position within one year of the approval of the petition.

24.     Qualified employees entering the United States to establish a new office are allowed a maximum initial stay of one year.  All other qualified employees are allowed a maximum initial stay of three years.  For all L-1A employees, requests for extensions of stay may be granted in increments of up to an additional two years, until the employee has reached the maximum limit of seven years.

25.     The L-1A petition may be filed by the United States or foreign employer and must be filed with:

> a.     Evidence establishing the existence of the qualifying relationship between the U.S. and foreign employer based on ownership and control, such as: an annual report, articles of incorporation, financial statements, or copies of stock certificates. Whether such evidence will be sufficient to meet the petitioner's burden of establishing such a qualifying relationship depends on the quality and probative value of the evidence submitted.

b.  Evidence of the beneficiary's employment for the required one year abroad in, as applicable, a managerial, executive, or specialized knowledge capacity.  Such evidence may include, but is not limited to, a letter from the beneficiary's foreign qualifying employer detailing his or her dates of employment, job duties, and qualifications, along with supporting documentary evidence; and

c.  A description of the proposed job duties and qualifications, and evidence showing that the proposed employment is in an executive, managerial, or specialized knowledge capacity.

26.  Additionally, if the L-1A beneficiary is coming to the United States to open or to be employed in a new office in the United States, the petitioner must submit evidence to show the following:

a.  Sufficient physical premises to house the new office have been secured;

b.  The beneficiary has been employed for one continuous year in the three-year period preceding the filing of the petition in an executive or managerial capacity and that the proposed employment involves executive or managerial authority over the new operation; and

10

  c. The intended U.S. operation, within one year of approval, will support an executive or managerial position.  This statement should be supported by information regarding the proposed nature of the office describing the scope of the entity, its organizational structure, and its financial goals;

  d. The size of the United States investment and the foreign entity's financial ability to remunerate the beneficiary and to commence doing business in the United States; and

  e. The organizational structure of the foreign entity.

27. A petitioner may seek to obtain U.S. permanent residence status for the L-1A by filing a USCIS Form I-140, Petition for Alien Worker.  If approved, the L-1A would then be able to obtain U.S. Citizenship after meeting the requirements for naturalization.

## DEFINITIONS

28. An alien is a person who is not a United States Citizen.

29. A beneficiary, for the purposes of this affidavit, means an alien named on a U.S. Department of Homeland Security (DHS) or U.S. Department of State (DOS) petition or application seeking a visa or other immigration benefit.

11

30.     A petitioner, for the purposes of this affidavit, means a person filing a DHS form seeking a benefit for an alien.

31.     A USCIS Form I-129, Petition for a Nonimmigrant Worker, (hereinafter E-2 petition or L-1A petition) is a form used by petitioners to file on behalf of a nonimmigrant worker to remain in or come to the United States temporarily to perform services or labor, or to receive training.

32.     A USCIS Form I-140, Immigrant Petition for Alien Worker, (hereinafter immigrant petition) is a form to petition for an alien worker to become a legal permanent resident in the United States.

## PROBABLE CAUSE (BACKGROUND)

33.     In May 2013, the Orlando DBFTF received information regarding a referral from the USCIS, Fraud Detection and National Security (FDNS), Center Fraud Detection Operations (CFDO), Vermont Service Center, regarding suspected immigration benefit fraud.  The information reported that **CARL FAREY**, DOB: XX/XX/1965, and his company Decar Enterprises USA, Inc., were suspected of preparing fraudulent L-1A visa petitions.  **FAREY** was suspected of including fraudulent supporting documents with the petitions.  USCIS identified **FAREY** as the president of Decar Enterprises USA, Inc. with a mailing address of xxxx Big Valley Boulevard, Kissimmee, Florida 34746 (**PREMISES**).

34.     On October 15, 2013, members of the Orlando DBFTF interviewed **FAREY**'s wife, Deirdre Farey.  Per her statements, at the time of the interview, Deirdre Farey was separated from **FAREY** and seeking a divorce.  Deirdre Farey stated that she used to make coffee and tea for clients at the couple's Kissimmee residence, and that **FAREY** does not have a background in immigration or visa law.  Deirdre Farey stated that her husband told clients that he knew a loophole in the E-2 visa rules and that he could exploit that loophole to obtain green cards.  Deirdre Farey further stated that **FAREY** would prepare the documents for his clients and submit them through the internet.

35.     On May 22, 2019, a Florida Department of State, Division of Corporations record search revealed that Decar Enterprises USA Inc. listed **FAREY** as president and Deirdre Farey as vice president, with the **PREMISES** listed as the mailing address.  Decar Enterprises USA Inc. was an active company from 2003 through 2014.

36.     On May 24, 2019, a Florida Department of State, Division of Corporations record search also revealed that **FAREY** is the president of Business Connexions Inc (FEIN: 82-3550662), with an active date of 2017 to the present.  The principal address for the company is in Davenport, Florida,

with a mailing address matching the **PREMISES** address.  Additionally,

**FAREY** is listed as the registered agent for the company.

37.    Between 2013 and 2019, the Orlando DBFTF reviewed employment petitions for companies associated with **FAREY**.  The following employment petitions are pertinent to this affidavit:

a.    Petition Number SRC1290296423 (hereinafter FRAUDULENT PETITION 1) was received at USCIS on June 7, 2012 with the correlating Immigrant petition for D.K., an E-2 nonimmigrant citizen of the United Kingdom, as a multinational executive or manager for his company K. Holdings Inc.  The petitioner for the Immigrant petition is listed as R.B.  The Florida Department of State, Division of Corporations reports K. Holdings Inc. (Federal Employer Identification Number (FEIN) 20-2454XXX) as being active from 2005 through 2018.

b.    Petition Number SRC1290303058 (hereinafter FRAUDULENT PETITION 2) was received at USCIS on June 14, 2012 with the correlating Immigrant petition for S.M., an E-2 nonimmigrant citizen of the United

Kingdom, as a multinational executive or manager for his company H. Associates Inc. The petitioner for the Immigration petition is listed as R.B. The Florida Department of State, Division of Corporations reports H. Associates Inc. (FEIN 42-1685XXX) as being active from 2005 through 2017.

c.   Petition Number WAC1802350963 (hereinafter FRAUDULENT PETITION 3) was received at USCIS on November 1, 2017 with the correlating E-2 petition for B.M., a citizen of the United Kingdom, for his company B.P.S. LLC. B.M. is also listed as the petitioner on the E-2 petition. The Florida Department of State, Division of Corporations lists B.P.S. LLC (FEIN 82-3075XXX) as being active from 2017 to the present. **FAREY** is listed as the Registered Agent for the company.

d.   Petition Number EAC1603951816 (hereinafter FRAUDULENT PETITION 4) was received at USCIS on November 27, 2015 with the correlating L-1A petition for G.M., a citizen of the United Kingdom, owner of A.M.M. Inc. R.B. is listed as the petitioner on the L-1A petition.

15

The Florida Department of State, Division of Corporations lists A.M.M. Inc. (FEIN 27-4826XXX) as being active from 2010 to the present.

e.  Petition Number EAC1718552390 (hereinafter FRAUDULENT PETITION 5) was received at USCIS on June 15, 2017 with the correlating L-1A petition for C.G., a citizen of the United Kingdom, owner of J.G.P.S. LLC. T.G. is listed as the petitioner on the L-1A petition. The Florida Department of State, Division of Corporations lists J.G.P.S. LLC (FEIN 37-178XXXX) as being active from 2015 to the present.

f.  Petition Number SRC1690185560 (hereinafter FRAUDULENT PETITION 6) was received at USCIS on March 21, 2016 with the correlating Immigrant petition for P.B., an E-2 nonimmigrant citizen of the United Kingdom, executive or manager of his company B.S.E. LLC. The petitioner for the Immigrant petition is E.P. The Florida Department of State, Division of Corporations reports B.S.E. LLC (FEIN) 94-347XXXX) as being active from 2009 to the present.

38.     After reviewing FRAUDULENT PETITIONS 1, 2, 4, 5, and 6,[4]

myself and other investigators observed patterns between the various petitions.

The petitions were created using the same preparation, formatting, and

supporting documents, including fraudulent IRS Form W-2s, corporate

organizational charts, corporate letterheads, and corporate profit and loss

statements.

## INVESTIGATION OF FRAUDULENT PETITION 1

39.     On February 27, 2014, members of the DBFTF interviewed J.K.,

who stated that she and her husband were former clients of **FAREY**.  J.K.

stated she met **FAREY** through friends from the British community in Central

Florida.  J.K. told investigators that **FAREY** claimed to know a loophole in

U.S. immigration law and would be able to obtain a green card for her.  J.K.

stated that she visited **FAREY** and his wife, Deirdre, several times to drop off

paperwork to **FAREY** at his residence on Big Valley Drive in Kissimmee,

Florida.  J.K. paid **FAREY** approximately $8,000 to prepare her immigration

petition and provided a check to **FAREY** which was payable to USCIS.

40.     The DBFTF located FRAUDULENT PETITION 1 for D.K.,

his wife J.K., and their company, K. Holdings Inc.  The petitioner for their

---

[4] FRAUDULENT PETITION 3 was presented differently from the other five petitions, which
consistently contained similar documents.

immigrant petition was R.B., alleged manager at K. Holdings Inc. An IRS Form W-2 provided with the petition contained R.B.'s name and true social security number.

41.     On November 19, 2018, DBFTF investigators interviewed R.B. Investigators positively identified him using his social security number. DBFTF investigators again interviewed R.B. on May 24, 2019. R.B. denied ever being the manager of any company, or petitioning for anyone in FRAUDULENT PETITION 1. R.B. stated that he has never been a petitioner for any immigration application. Furthermore, R.B. never gave anyone permission to use his name and social security number in FRAUDULENT PETITIONS 1, or any other immigration employment petition.

**INVESTIGATION OF FRAUDULENT PETITION 2**

42.     On December 13, 2018, members of the DBFTF interviewed S.M., owner of H. Associates Inc. S.M. was the beneficiary in FRAUDULENT PETITION 2. S.M. stated that he was referred to **FAREY** in about 2007. S.M. provided **FAREY** with supporting documents which included articles of incorporation, bank statements, invoices, and S.M.'s signature on a blank piece of paper. Regarding S.M.'s immigration petition, **FAREY** said, "leave it with me and I will take care of it for you." S.M. paid

18

FAREY $2,000-$3,000 dollars to renew S.M.'s E-2 petition, the original of which was not prepared by FAREY.

43.     In both the 2018 and 2019 interviews of R.B., R.B. further stated that the signatures purported to be his signatures in FRAUDULENT PETITION 2 were forgeries.  R.B. insisted that he had never heard of the companies H. Associates Inc.  R.B. stated that he was never the manager of either company, nor did he give anyone permission to use his name and social security number in FRAUDULENT PETITION 2.

### INVESTIGATION OF FRAUDULENT PETITION 3

44.     On April 22, 2019, members of the DBFTF interviewed B.M., owner of B.P.S. LLC and beneficiary in FRAUDULENT PETITION 3. B.M. stated that he was referred to FAREY in about 2017.  B.M. said that R.H. told him about the E-2 visa.  R.H.'s father, K.H., put B.M. in contact with FAREY, who helped B.M. obtain a B-2 nonimmigrant visitor's visa in exchange for $4,000 dollars.

45.     B.M. reviewed FRAUDULENT PETITION 3 and stated that he did not recall seeing or completing the E-2 petition.  FAREY was the only person that assisted him with his E-2 petition.  B.M. stated that he went to FAREY's office which was located at FAREY's house.  B.M. reviewed the petition and supporting documentation in FRAUDULENT PETITION 3 and

stated the petition had inaccurate information relating to his wages, net worth, investments, and bank statements.  B.M. viewed a letter, addressed from B.M. to USCIS, dated October 24, 2017.  B.M. stated that he did not write the letter, but that he did sign it.  B.M. said that **FAREY** was the only person that prepared his E-2 petition.  B.M. also stated that R.H. and K.H. previously used **FAREY's** visa services.

### INVESTIGATION OF FRAUDULENT PETITION 4

46.    On May 1, 2019, members of the DBFTF interviewed G.M., who is the owner of A.M.M. Inc. and beneficiary in FRAUDULENT PETITION 4.  G.M.'s wife, D.M., was also present.  G.M. was referred to **FAREY** around 2008.  **FAREY** said they would be able to get an L-1A visa, file a two-year extension, and then file for a green card.  G.M. paid **FAREY** approximately $2,000 at the time of filing, with an additional $2,500 payment after the process was completed.  **FAREY** told G.M. that he knew how to fill in the immigration forms.  After reviewing the E-2 petition, G.M. and his wife, D.M., stated that they did not know R.B., the listed manager and petitioner on FRAUDULENT PETITION 4.  Furthermore, G.M. told the investigators that supporting documentation contained in the petition, including gross income, net income, corporate organizational charts,

academic records, profit and loss statements, IRS Form W-2s, and 2015 Quarterly Federal Tax report, were fraudulent.

47.    The evidence suggests that **FAREY** kept copies of FRAUDULENT PETITION 4's supporting documentation from G.M.'s first L-1A petition.  G.M. told investigators that he did not give **FAREY** additional supporting documentation for the L-1A petition extension.  After **FAREY** prepared the L-1A petition extension, **FAREY** requested that G.M. pick up and mail the L-1A petition to USCIS.

48.    D.M. stated that **FAREY** sold them a nightmare and that **FAREY** makes money off other people's money.

49.    In his November 2018 and May 2019 interviews, R.B. stated that the signatures purported to be his signatures in FRAUDULENT PETITION 4 were forgeries.  R.B. stated that he never heard of the company A.M.M. Inc. R.B. stated that he was never the manager of the company nor gave anyone permission to use his name and social security number in FRAUDULENT PETITION 4.  No one associated with any of the petitions had any familiarity with R.B.

## INVESTIGATION OF FRAUDULENT PETITION 5

50.    On May 2, 2019, members of the DBFTF interviewed C.G., owner of J.G.P.S. LLC and beneficiary in FRAUDULENT PETITION 5.

C.G. stated she was concerned that her E-2 status may not be extended and would be denied. C.G. obtained her E-2 status before meeting **FAREY**. C.G. stated that she then received help from **FAREY** to file an L-1A petition. **FAREY** said that he could complete the forms for the L-1A petition. C.G. offered to pay and did pay **FAREY** $1,000 for helping her prepare the L-1A petition and $1,000 for the Immigrant petition.

51.    After reviewing the documents in FRAUDULENT PETITION 5, C.G. stated that the gross annual income earned and net income earned were incorrect. C.G. also stated that she did not know or provide the name T.G., who was listed as the petitioner and general manager of the business. Furthermore, C.G. stated the overseas business associated with her L-1A petition was unknown to her and the corresponding corporate organizational charts, IRS Form W2s, Federal Quarterly Tax reports, photographs of the business, property lease agreements, and profit and loss sheets were fake and that she had not provided them to **FAREY**. C.G. stated that it was scary that someone could submit such false documents with her signature on them.

### INVESTIGATION OF FRAUDULENT PETITION 6

52.    On May 8, 2019, members of the DBFTF interviewed B.F., who is listed as an employee in FRAUDULENT PETITION 6. B.F. stated that he never worked for B.S.E. LLC and the last time that he had a job was in about

2012. B.F. did not know owners P.B., S.B., nor the petitioner E.P. The information in FRAUDULENT PETITION 6 that B.F. was a cleaner for the company was not true. B.F. confirmed that his name and social security number as listed in the IRS Form W-2, attached to the petition, were correct. B.F. never authorized anyone associated with FRAUDULENT PETITION 6 to use his name and social security number.

53.     On May 8, 2019, members of the DBFTF interviewed A.M., who is listed as an employee in FRAUDULENT PETITION 6. A.M. stated he never worked for nor had he heard of B.S.E. LLC. A.M. did not know owners P.B. or S.B. A.M. reviewed the corporate organizational chart with his name shown as a landscaper and stated that was not true. A.M. reviewed the IRS Form W-2 with his name and social security number attached to FRAUDULENT PETITION 6 and confirmed that the listed information was correct. However, he never worked for B.S.E. LLC and never authorized anyone to use his name and social security number.

54.     On May 9, 2019, members of the DBFTF interviewed E.P., who is the petitioner for FRAUDULENT PETITION 6. E.P. stated that he knew P.B. and S.B. and worked for them as a landscaper from about 2010 to 2016. E.P. reviewed the documents in FRAUDULENT PETTION 6 and stated he was not the manager and never signed the Immigrant petition. E.P. asserted

that his name and social security number on the IRS Form W-2 were correct, but his earnings were inaccurate.   E.P. also reviewed Federal Quarterly Tax reports with his signature and stated the signature was a forgery as he did not sign the Federal Quarterly Tax reports.  E.P. also stated that he never authorized his name and social security number to be used as the petitioner, manager or on the federal tax forms.

55.   On May 14, 2019, members of the DBFTF interviewed D.J., who is listed as an employee in FRAUDULENT PETITION 6.  D.J. stated he never worked for nor heard of B.S.E. LLC.  D.J. also did not know owner P.B. nor the petitioner, E.P.  D.J. reviewed the IRS Form W-2 containing his name and a social security number, attached to FRAUDULENT PETITION 6, and confirmed that the information was correct.  However, he never worked for B.S.E. and never authorized anyone to use his name and social security number.

## EXECUTION OF A SEARCH WARRANT

56.   On June 12, 2019, members of the DBFTF executed a federal search warrant at **FAREY's** residence, located at xxxx Big Valley Boulevard, Kissimmee, Florida 34746.  During the execution of the search warrant,

agents found business documents related to FRAUDULENT PETITONS 3, 5, and 6.

## CARL FAREY INTERVIEW

57.     On June 12, 2019, **FAREY** was interviewed after advisement of his constitutional rights.  **FAREY** stated that he does "a number of different things," which included helping people "do their paperwork for their immigration papers" and other services.  **FAREY** stated that he prepared E-2 and L-1 packages but had not done an L-1 package in years.  When asked about how much **FAREY** charges to prepare an E-2 visa package, **FAREY** stated that he is more of a business consultant and that he charges "normally from anything from $3,000 to $5,000, but that would be over a period of time."  When confronted with the repetitive use of specific identities and identifying information in the supporting documents attached to the petitions, **FAREY** stated that the local British community is "small," shifting blame onto the beneficiaries.

## CONCLUSION

58.     Based on the forgoing, I submit that this affidavit supports probable cause to charge **CARL STUART FAREY** with violating 18 U.S.C. §§ 1546 and 2 (aiding and abetting fraud and misuse of visas, permits and

other documents), specifically relating to FRAUDULENT PETITION 5

received by USCIS on June 15, 2017.

      59.   This concludes my affidavit.

                           Curtis Johnson, Special Agent
                           Homeland Security Investigations
                           U.S. Department of Homeland Security


Subscribed and sworn to before me
this _17_ day of _January,_ 2020.

The Honorable Thomas B. Smith
United States Magistrate Judge

26